UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

COLLEEN A.[1],                          )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )        No. 2:20-cv-00422-DLP-JRS
                                        )
ANDREW M. SAUL,                         )
                                        )
                    Defendant.          )

## ORDER

Plaintiff Colleen A. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Supplemental Security Income ("SSI") benefits under Title XVI of

the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons set forth

below, this Court hereby **REVERSES** the ALJ's decision denying the Plaintiff

benefits and **REMANDS** this matter for further consideration.

## I.  PROCEDURAL HISTORY

On February 22, 2018, Colleen protectively filed her application for Title XVI

SSI benefits. (Dkt. 13-2 at 16, R. 15). Colleen alleged disability resulting from a

heart condition, back and neck problems, anxiety, bipolar disorder, and attention

deficit disorder. (Dkt. 13-3 at 2-3, R. 71-72). The Social Security Administration

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

("SSA") denied Colleen's claim initially on August 24, 2018, (Dkt. 13-3 at 2-18, R. 71-87), and on reconsideration on January 3, 2019. (Id. at 19-36, R. 88-105). On January 14, 2019, Colleen filed a written request for a hearing, which was granted. (Dkt. 13-2 at 16, R. 15).

On April 6, 2020, Administrative Law Judge ("ALJ") Monica LaPolt conducted a hearing, where Colleen and vocational expert Gail H. Franklin appeared telephonically. (Dkt. 13-2 at 35-71, R. 34-70). On April 22, 2020, ALJ LaPolt issued an unfavorable decision finding that Colleen was not disabled. (Dkt. 13-2 at 16-29, R. 15-28). On May 1, 2020, Colleen appealed the ALJ's decision. (Dkt. 13-4 at 77-79, R. 181-183). On June 15, 2020, the Appeals Council denied Colleen's request for review, making the ALJ's decision final. (Dkt. 13-2 at 2, R. 1). Colleen now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot

engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Colleen is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).

The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Colleen was thirty-one years old when she applied for SSI. (Dkt. 13-5 at 2, R. 184). She is a high school graduate. (Dkt. 13-6 at 4, R. 203). Collen has no past relevant work. (Dkt. 13-2 at 27, R. 26).

#### B. ALJ Decision

In determining whether Colleen qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Colleen was not disabled. (Dkt. 13-2 at 29, R. 28). At Step One, the ALJ found Colleen had not engaged in substantial gainful activity since her February 22, 2018 application date.[3] (Id. at 18, R. 17).

At Step Two, the ALJ found that Colleen has severe impairments of fibromyalgia, degenerative disc disease of the cervical and lumbar spine, obesity, asthma, schizoid personality disorder, anxiety, attention deficit hyperactivity disorder, oppositional defiant disorder, and bipolar disorder. (Dkt. 13-2 at 19, R. 18). The ALJ found non-severe impairments of gastroesophageal reflux disease (GERD),

---

[3] SSI is not compensable before the application date. 20 C.F.R. § 416.335.

dermatitis due to a history of burns, dandruff, urinary tract infections, pneumonia, bronchitis, cellulitis, abscesses, a hip strain, a ruptured ovarian cyst, shingles, gastritis, a renal cyst, sinus tachycardia, hypertension, atypical chest pain or palpitations, a right calcaneal spur, a cervical or thoracolumbar strain, and vertigo-like symptoms. (Dkt. 13-2 at 19, R. 18). The ALJ also noted that while there are references in the record to claimant's history of alcohol and substance abuse, they do not constitute a contributing factor material to the determination of disability. (Id.).

At Step Three, the ALJ found that Colleen's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Dkt. 13-2 at 19-22, R. 18-21). In reaching this determination, the ALJ considered Listing 1.04 (disorders of the spine), Listing 3.03 (asthma), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), Listing 12.08 (personality and impulse-control disorders), Listing 12.11 (neurodevelopmental disorders), SSR 12-2p (fibromyalgia), and SSR 19-2p (obesity). (Id.).

As to the "paragraph B" criteria, the ALJ found Colleen had no limitation in understanding, remembering, or applying information or in adapting or managing oneself; mild limitations in interacting with others; and moderate limitations in concentration, persistence, or maintaining pace. (Dkt. 13-2 at 21, R. 20). The ALJ also found the "paragraph C" criteria not satisfied. (Dkt. 13-2 at 21-22, R. 20-21).

After Step Three but before Step Four, the ALJ found that Colleen had the residual functional capacity ("RFC") to perform light work, with the following limitations: occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, and scaffolds; and no more than occasional exposure to extreme cold, heat, and concentrated airborne irritants, including but not limited to fumes, odors, dusts, and gases. (Dkt. 13-2 at 22-27, R. 21-26). The ALJ further found that Colleen has the mental capacity to understand, remember, and follow simple instructions; and can sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence. (Id.).

At Step Four, the ALJ concluded that Colleen has no past relevant work. (Dkt. 13-2 at 27, R. 26). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Colleen's age, education, work experience, and residual functional capacity, she was capable of performing other work. (Id. at 28, R. 27). The ALJ concluded that Colleen was not disabled. (Id. at 28-29, R. 27-28).

## IV.   ANALYSIS

Colleen argues that this matter should be remanded because (1) the ALJ's decision is based on cherry-picked evidence that overlooks her difficulties in functioning and objective abnormalities and (2) the ALJ failed to build a logical bridge from the evidence to her conclusions. (Dkt. 15). Specifically, Colleen presents arguments related to the ALJ's assessment of Plaintiff's mental impairments and the RFC. (Id.). The Court will address these issues in turn.

## A. Assessment of "Paragraph B" Criteria

First, Colleen challenges the ALJ's consideration of the "paragraph B" criteria. (Dkt. 15 at 20). The Commissioner responds that the Plaintiff is asking the Court to reweigh the evidence, which it is not permitted to do. (Dkt. 18 at 11). In addition, the Commissioner contends the Plaintiff has failed to support her contention that she met or medically equaled a listed mental impairment. (Id.).

In reply, Colleen maintains that the Commissioner has failed to appreciate Colleen's argument. (Dkt. 19 at 7-8). Plaintiff is not requesting the Court reweigh the evidence nor has Plaintiff argued that her conditions meet or medically equal a Listing; rather, she is arguing that the ALJ failed to consider all relevant evidence in evaluating the "paragraph B" criteria, an error which warrants remand. (Id.).

At Steps Two and Three of the five-step sequential evaluation process, mental impairments are evaluated using a "special technique" described in 20 C.F.R. § 416.920a. The first task is deciding whether the claimant has a medically determinable mental impairment by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 416.920a(b). If the claimant has a medically determinable impairment, the second step requires the ALJ to decide whether the mental impairment is severe or non-severe, by rating "the degree of functional limitation in four broad areas known as the B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing

oneself." *Leslie T. v. Saul*, No. 4:19-cv-00113-SEB-DML, 2020 WL 6586658, at *4 (S.D. Ind. Oct. 19, 2020).

In this case, as noted above, at Step Two the ALJ determined that Colleen had several mental impairments, including schizoid personality disorder, anxiety, attention deficit hyperactivity disorder, oppositional defiant disorder, and bipolar disorder. (Dkt. 13-2 at 19, R. 18). Under the paragraph B criteria, reciting some of the medical history and the claimant's statements, the ALJ determined that Colleen had no limitations in understanding, remembering, or applying information, or in adapting or managing oneself; only a mild limitation in interacting with others; and a moderate limitation in concentration, persistence, or maintaining pace. (Dkt. 13-2 at 21, R. 20). Plaintiff maintains that the ALJ failed to present sufficient reasons to support her findings, but relied instead on cherry-picked evidence. Specifically, Colleen asserts that if the ALJ had considered all of the evidence, instead of "myopically" focusing on normal findings, the ALJ would have found greater limitations in Plaintiff's ability to adapt and manage herself; interact with others; and concentrate, persist, or maintain pace.[4] (Dkt. 15 at 20-25). The Court will evaluate the ALJ's finding in each broad area of function contested by the Plaintiff.

### i. *Adapting and Managing Oneself*

Colleen argues that the ALJ "cherry-picked" evidence favoring her conclusion, while ignoring contrary evidence in order to find Colleen's mental impairments posed no limitations on her ability to adapt and manage oneself. (Dkt.

---

[4] Plaintiff does not challenge the ALJ's finding of no limitation in understanding, remembering, or applying information. (Dkt. 15 at 20-25).

15 at 23). The Plaintiff also maintains that the ALJ ignored evidence in the record of Plaintiff's homelessness, the fact that the Department of Child Services removed Colleen's son from her care because of the claimant's inability to care for her son, Colleen's need for reminders to engage in basic self-care, assistance with household chores, and her father's statements concerning her hygiene and inability to tend to household needs. (Dkt. 15 at 23-24). Colleen also maintains the ALJ overlooked the opinion of clinical psychologist, Dr. Howard Wooden, who diagnosed Colleen with schizoid personality disorder with generalized anxiety based on the mental status examination. (Dkt. 15 at 24, Dkt. 13-10 at 169, R. 655). Lastly, the Plaintiff maintains that the ALJ's finding of no limitations in this area of functioning is contrary to the findings of the State Agency psychological consultants, Dr. Amy Johnson and Dr. B. Randal Horton, who found moderate limitations in this area. (Dkt. 15 at 24). In response, the Commissioner maintains that the Plaintiff has failed to identify any evidence that the ALJ allegedly failed to account for in assessing Colleen's ability to adapt or manage herself. (Dkt. 18 at 16). Instead, the Commissioner argues the Plaintiff is inviting the Court to substitute its own judgment on the facts. (Id. at 15).

Here, the ALJ found Colleen had no limitation in adapting and managing herself.[5] (Dkt. 13-2 at 21, R. 20). In making this determination, the ALJ relied on

---

[5] Adapting or managing oneself refers to the ability to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include responding to demands, adapting to change; managing ones psychologically-based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans for oneself independently of others, maintaining personal hygiene and attire appropriate to a work setting, and being aware of normal hazards and taking appropriate precautions. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(4).

Colleen's statements that she was capable of counting change; shopping in stores for necessities; and performing some housework, such as laundry. (Dkt. 13-2 at 21, R. 20). The ALJ also considered Colleen's treatment notes demonstrating that she was generally cooperative with good eye contact, and had satisfactory hygiene, a logical thought process, and the ability to repeat digits or perform basic calculations without difficulty. (Id.).

Though an ALJ need not mention every piece of evidence in the record, an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence pointing to a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Kelly K. v. Kijakazi*, No. 4:20-cv-78-JVB-SLC, 2022 WL 538561, at *2 (N.D. Ind. Feb. 23, 2022). First, the ALJ uses Colleen's statement regarding her ability to count change, shop, and perform housework to support her finding that Plaintiff had no limitation in adapting or managing oneself. (Dkt. 13-2 at 21, R. 20). When placed in context of how Colleen performs these activities, however, the Court finds the ALJ's reasoning unsupported.[6]  In the function report, which the ALJ relies on to discount Colleen's statements, the ALJ fails to address Colleen's qualifications around shopping and performing household chores. (Dkt. 13-6 at 17-24, R. 216-223). In the report, Colleen

---

[6] ALJs have been consistently cautioned against placing "undue weight" on a claimant's ability to perform activities of daily living in evaluating a claimant's ability to perform work especially if that can only be done with significant limitations. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

stated she only shopped for necessities like water, deodorant, soap, and it took her approximately 1-2 hours to complete the shopping. (Dkt. 13-6 at 20, R. 219). She reported that she is very slow at cleaning her home because of her physical impairments and she has someone from the church help her with laundry every two weeks. (Id. at 19, R. 218). In regard to money, Colleen stated that it takes her extra time to count money and remember how much she has, and that bills confuse her. (Id. at 20-21, R. 219-20).

Second, the ALJ failed to consider portions of the record that document Colleen's struggles with housing and food insecurity. Health care records from Hamilton Center document years of the Plaintiff's struggles with managing and caring for herself. (Dkt. 13-10 at 82-85, R. 568-571). For several years, Colleen was unable to sustain consistent housing. Since 2018, Colleen's electricity has been suspended intermittently. (Dkt. 13-4 at 38-42, R. 142-46). In her Adult Function Report, Colleen noted that she regularly eats at a local homeless shelter because her electricity is turned off; that she is unable to sleep without medication; dressing herself is painful, and bathing hurts; and she has to make notes to remind herself to brush her teeth and trim her nails. (Dkt. 13-6 at 17-21, R. 216-20).

On August 21, 2018, psychological consultative examiner, Dr. Howard Wooden examined the Plaintiff. (Dkt. 13-10 at 166, R. 652). Dr. Wooden acknowledged Colleen's allegations of anxiety, and her passiveness around maintaining a home or conducting yard work, and paying bills. (Id. at 166-69, R. 652-55). From the examination, Dr. Wooden found Colleen overall to be extremely

distant, vague, and oblivious to her history. (Dkt. 13-10 at 167-68, R. 653-54). While Dr. Wooden found Colleen's grooming and hygiene satisfactory, (Id. at 169, R. 655), he noted, in regard to all of her activities of daily living, Colleen appeared emotionless. (Id. at 168, R. 654). Dr. Wooden diagnosed the Plaintiff with schizoid personality disorder with generalized anxiety associated with physical issues along with a probable history of polysubstance abuse. (Id. 169, R. 655). In discussing the Plaintiff's cognitive functioning, Dr. Wooden described Colleen's performance on several clinical tasks, including her immediate recall abilities, fund of information, calculation ability, and judgment. (Id.). Most notably, Dr. Wooden opined that Colleen's remote memory was questionable and that she would be a poor candidate for handing funds. (Dkt. 13-10 at 169-170, R. 655-56).

In assessing Collen's abilities to adapt and manage herself, the ALJ only referenced a portion of the immediate recall and calculation test, but failed to address Dr. Wooden's other findings regarding these clinical tasks. (Dkt. 13-2 at 21, R. 20). While the Court recognizes Dr. Wooden's opinion did not specifically contain any findings as to a particular level of limitation for the four areas of mental functioning in the "paragraph B" criteria, the ALJ failed to acknowledge that Dr. Wooden's report stated that Colleen was "extremely passive, distant, almost Pollyannish at times in her demeanor" and "shows no evidence of any spontaneity or emotionality." (Dkt. 13-2 at 21, R. 20; Dkt. 13-10 at 169, R. 655). After reviewing the evidence, state agency psychological consultants Dr. Johnson and Dr. Horton both opined that Colleen was moderately limited in her ability to adapt and manage

herself. (Dkt. 13-3 at 9, 26, R. 78, 95). By failing to consider all of the relevant evidence and cherry-picking evidence supportive of her determination, the ALJ's analysis in finding Colleen had no limitation in managing and adapting oneself is unsupported.

### ii. Interacting with Others

Next, the Plaintiff maintains that the ALJ erred in finding only a mild limitation in Colleen's ability to interact with others.[7] (Dkt. 13-2 at 21, R. 20). Colleen contends that in reaching this conclusion, the ALJ failed to consider her bipolar disorder and schizoid personality disorder diagnoses; Dr. Wooden's observations concerning her affect; past examination findings of depressed mood and combative attitude; her termination after only one day at her cleaning job due to issues with the person training her;[8] and the statements she and her father provided concerning this functional area.[9] (Dkt. 15 at 21). Colleen also asserts that the mild finding is inconsistent with the State Agency psychological consultants' findings of moderate limitations in this area. (Id.).

---

[7] Interacting with others refers to the ability to relate to and work with supervisors, co-workers, and the public. Examples include cooperating with others; asking for help when needed; handling conflict with others; stating own point of view; initiating or sustaining conversation; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(2).

[8] Plaintiff points to a record from the Hamilton Center stating that she was fired from a cleaning job the same day she was hired due to trouble with the person training her. (Dkt. 15 at 21; Dkt. 13-10 at 95, R. 581). However, that record also states that it is not clear what the exact problem was and whether pace was an issue. (Dkt. 13-10 at 96, R. 581).

[9] While Colleen provides multiple instances in the record and her own statements which she argues undermines the ALJ's assignment of only a mild limitation in interacting with others, several of Colleen's proffered reasons are invitations for the Court to reweigh the evidence and substitute its judgment for that of the Commissioner. That is not the Court's role. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

In her decision, the ALJ reasoned that Colleen's ability was mildly limited in this area because Colleen spends time with others on a regular basis, she was able to get along with treatment staff and other clients in treatment settings, and on examination, Colleen was cooperative with good eye contact. (Dkt. 13-2 at 21, R. 20). The ALJ also discounted the state agency psychological consultants' findings that Colleen had a moderate limitation in interacting with others. Here, the ALJ found the state agency psychological consultants' opinion that Colleen would need significant work-related social limitations unpersuasive because of Colleen's course of treatment and the objective evidence. (Dkt. 13-2 at 26, R. 25).

First, the ALJ pointed to Colleen's alleged statement in her Adult Function Report that she spends times with others on a regular basis. (Dkt. 13-2 at 21, R. 20). This is a misreading of the record. While Colleen stated that she spends time with others going to get ice cream, she did not answer how often she engaged in this activity. (Dkt. 13-6 at 21, R. 220). When asked specifically to identify any places she goes on a regular basis, Colleen did not identify any locations. (Id.). Moreover, in his third-party statement, Colleen's father reported that Colleen attended church infrequently; she has no friends that she stays in contact with; and she stays to herself unless she knows someone. (Dkt. 13-6 at 29, R. 228).

The ALJ concluded that the medical evidence supported at most a mild limitation in Colleen's ability to interact with others. (Dkt. 13-2 at 21, R. 20). The Court disagrees. While Plaintiff's treatment providers noted her ability to get along with others in a treatment setting, the Plaintiff admitted that she only goes out to

shop for necessities, and that she does not want to go out often. (Dkt. 13-6 at 20, 22, R. 219, 221). Dr. Wooden found Colleen to be extremely distant, passive, and emotionless in regard to her descriptions of all her relationships, (Dkt. 13-10 at 166-70, R. 652-56), and recounted her statements that she has no friends, had no real contact with anybody, and that she mainly sits around and thinks about why her "life sucks." (Dkt. 13-10 at 168, R. 654).

The ALJ's assessment of Colleen's limitation with interacting with others also does not reference the opinions of state agency psychological consultants, Drs. Johnson and Horton, who found that Colleen had moderate limitations in interacting with others. (Dkt. 13-3 at 9, 26, R. 78, 95). The ALJ found these opinions only somewhat persuasive. In concluding Colleen had no significant work-related social limitations, the ALJ discounted the consultants' opinions because of Colleen's lack of aggressive and consistent treatment and objective evidence. (Dkt. 13-2 at 26, R. 25).

While an ALJ can consider a lack of treatment in reaching a decision, she is required to ask the claimant about the reasons for the lack of treatment before drawing any inferences about a claimant's condition. *See, e.g., Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to obtain treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care."); *Edge v. Berryhill*, No. 15 CV 50292, 2017 WL 680365, at *6 (N.D. Ill. Feb. 21, 2017); SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in

the record [based on the frequency or extent of treatment sought] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The ALJ failed to do that here. The ALJ's decision is void of any acknowledgement of the various reasons for Colleen's lack of treatment, including a lack of financial resources and medication side effects, both of which are outlined in the record. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 77, 82, 86, R. 563, 568, 572).

The ALJ's failure to support her decision with medical or record evidence, to confront the contrary evidence that did not support her decision, or to cite to any medical opinions assigning lesser limitations resulted in a failure to build the requisite logical bridge from the evidence to her conclusion that Colleen had at most a mild limitation in interacting with others. Accordingly, remand is warranted.

### iii.   Concentration, Persistence, and Pace

The ALJ next found moderate limitations in Colleen's ability to concentrate, persist, or maintain pace.[10] (Dkt. 13-2 at 21, R. 20). Colleen maintains that there is no logical bridge between the ALJ's finding and the evidence because the ALJ failed to consider Plaintiff's fatigue and difficulty sleeping, reports of difficulty concentrating, migraines, anxiety, and her father's statements concerning her attention span. (Dkt. 15 at 22). Colleen also asserts that that the ALJ did not

---

[10] Concentrating, persisting, or maintaining pace refers to the ability to focus on work activities and stay on task at a sustained rate. Examples include initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; and sustaining an ordinary routine and regular attendance at work. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(3).

consider the fact that her ability to concentrate, persist, and maintain pace is dependent on her pain and other conditions. (Dkt. 15 at 22-23). The Commissioner asserts that Plaintiff fails to show how this evidence rises to a marked or extreme limitation. (Dkt. 18 at 12).

Substantial evidence adequately supports the ALJ's finding of a moderate limitation in the Plaintiff's ability to concentrate, persist and maintain pace. The ALJ's finding of moderate limitations coincides with State Agency reviewing physicians Drs. Johnson and Horton's findings of moderate limitations. (Dkt. 13-2 at 21, R. 20; Dkt. 13-3 at 9, 26, R. 78, 95). The ALJ recognized Colleen's statements that her conditions affect her ability to concentrate and complete tasks, and that she does not finish things she starts. (Dkt. 13-2 at 21, R. 20). The ALJ considered that during examinations, Colleen is generally alert, oriented, and able to maintain attention and concentration. (Id.). The ALJ also noted that Colleen occasionally exhibits a flat or restless affect. (Id.). The Plaintiff has failed to identify any medical or record evidence inconsistent with the ALJ's finding of a moderate limitation in Colleen's ability to concentrate, persist, and maintain pace.

## B. Residual Functional Capacity

Next, Colleen asserts that the ALJ's RFC assessment fails to fully account for her physical and mental limitations. (Dkt. 15 at 25-32). The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "A regular and continuing basis

19

means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings), and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

### i. *Function-by-Function Assessment*

Colleen contends that the RFC fails to substantially set forth what she is capable of performing because the ALJ failed to provide a function-by-function analysis. (Dkt. 15 at 25-26). Although the RFC is a function-by-function assessment, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient. *Adams v. Comm'r of Soc. Sec.*, No. 1:20-cv-00471-SLC, 2022 WL 621035, at *7 (N.D. Ind. Mar. 3, 2022) (quoting *Knox v. Astrue*, 327 F. App'x 652, 657 (7th

20

Cir. 2009)); *Feldhake v. Colvin*, No. 1:13-cv-01259-TAB-JMS, 2014 WL 4250342, at

*4 (S.D. Ind. Aug. 27, 2014) (same); *Erwin v. Astrue*, No. 1:11–cv–0319-DML-JMS,

2012 WL 896377 (S.D. Ind. Mar.15, 2012) (same). The ALJ has provided such a

narrative discussion here. (Dkt. 13-2 at 22-27, R. 21-26).

        ii.   *Physical Limitations*

    Colleen contends that the ALJ's "light work" assessment is inconsistent with

her abilities, as evident by her diagnoses, physical examinations, imaging, stress

test, ineffective treatment, and own subjective complaints and statements. (Dkt. 15

at 26-28). Colleen argues that this record evidence also undermines the ALJ's

finding that Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel,

crouch, and crawl. (Id. at 28). Colleen also maintains that the ALJ failed to consider

whether restrictions on handling and fingering were required. (Id.). The

Commissioner asserts that the ALJ "more-than-adequately explained" her findings

on Plaintiff's physical limitations. (Dkt. 18 at 14). The Commissioner also asserts

that Plaintiff fails to identify any medical source that opined that greater

limitations with sitting, standing, walking, engaging in postural activities, or using

her hands were necessary. (Dkt. 18 at 14).

    With regard to physical limitations, the ALJ found that Colleen is able to

perform light work, except she can occasionally climb ramps or stairs, balance,

stoop, kneel, crouch, or crawl; never climb ladders, ropes, and scaffolds; and have no

more than occasional exposure to extreme cold, heat, and concentrated airborne

irritants, including but not limited to fumes odors, dusts, and gases. (Dkt. 13-2 at 22, R. 21).

In making this assessment, the ALJ considered medical evidence from 2017 showing conservative treatment for Colleen's musculoskeletal pain, headaches, and breathing problems. (Dkt. 13-2 at 23, R. 22; Dkt. 13-9 at 27-30, 100-02, R. 412-15, 485-87; Dkt. 13-10 at 2-10, 47-61, 102-08, 124-28, 136-41, 143-48, 153-59, 161-65, R. 488-96, 533-47, 588-94, 610-14, 622-27, 629-34, 639-45, 647-51). The ALJ noted that 2017 X-rays of Colleen's cervical spine and images of her lumbar spine showed minimal spurring (bony projection) and no abnormalities. (Dkt. 13-2 at 23, R. 22; Dkt. 13-10 at 43-44, R. 529-30).

The ALJ acknowledged a 2018 primary care appointment with Dr. Joseph Abdayem showing a normal gait, no wheezing, no focal motor or sensory deficits, and no documented use of an assistive device, despite Plaintiff's obesity and complaints of fatigue, weakness, and shortness of breath. (Dkt. 13-2 at 23, R. 22; Dkt. 13-10 at 109-14, R. 595-600). In March 2018, Plaintiff was injured in a car accident and underwent a CT scan of her lumbar spine. (Dkt. 13-2 at 23, R. 22; Dkt. 13-9 at 20, R. 405). The scan showed multilevel disc narrowing but no significant central canal or neural foraminal stenosis. (Dkt. 13-2 at 24, R. 23; Dkt. 13-9 at 20, R. 405). The ALJ considered Colleen's May 2018 appointment with Dr. Abdayem in which Colleen complained of persistent, severe back pain and had tenderness and a positive straight leg test, but nevertheless exhibited a normal gait, full range of motion in the lower extremities, normal sensation and strength, and no documented

22

use of an assistive device. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 102-08, R. 588-94). The ALJ noted no documented gait-related abnormalities on examination in subsequent primary care visits. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 171-94, R. 657-80; Dkt. 13-11 at 190-223, R. 933-66).

On December 29, 2018, Colleen was seen by Dr. Luke Rinehart for a consultative physical examination. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 196, R. 682). Dr. Rinehart noted Colleen's complaints of widespread musculoskeletal pain, chest pain, nausea, fatigue, difficulty sleeping, and shortness of breath. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 196-97, R. 682-83). On physical examination, Dr. Rinehart noted limited motion in Colleen's lumbar spine, cervical spine, and both shoulders; tenderness in the lumbar spine; and weakness in the upper extremity. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 197-98, R. 683-84). As the ALJ acknowledged, Dr. Rinehart nonetheless found normal gait, no use of an assistive device, normal fine and gross manipulation, and the ability to heel to toe walk. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 197-98, R. 683-84).

The ALJ also considered the medical records from 2019 and 2020 showing non-antalgic gait; ability to heel to toe walk; and normal sensation, strength, and reflexes, despite Colleen's complaints of significant pain in her lower back, neck, shoulders, and hips. (Dkt. 13-2 at 24, R. 23; Dkt. 13-10 at 212-15, 242-46, R. 698-701, 728-32; Dkt. 13-11 at 133-43, 190-223, R. 876-86, 933-66).

The ALJ extensively articulated the medical evidence related to Plaintiff's physical limitations. Moreover, the ALJ's assessed RFC provides greater

restrictions than that found by Dr. Rinehart, and State Agency medical consultants Dr. Joshua Eskonen and Dr. M. Ruiz. In particular, the ALJ limited Colleen to occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and never climbing ladders, ropes, and scaffolds. (Dkt. 13-2 at 22, R. 21). Further, by limiting her to light work, the ALJ found that Colleen can lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. (Id.). *See* 20 C.F.R. § 416.967(b). Conversely, Dr. Rinehart opined that Colleen would be able to walk five to six hours in an 8-hour workday, could frequently carry less than 20 pounds, and could occasionally carry more than 30 pounds. (Dkt. 13-10 at 198, R. 684). Drs. Eskonen and Ruiz found that Colleen could lift and/or carry 20 pounds occasionally and 10 pounds frequently; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and stairs. (Dkt. 13-3 at 10-12, 27-29, R. 79-81, 96-98).

In short, the ALJ built an accurate and logical bridge between the evidence and the physical limitations assessed in the RFC. Accordingly, remand is not warranted on the issue of Plaintiff's physical limitations.

### ii.   *Mental Limitations*

Colleen also maintains that the ALJ's decision fails to evaluate properly Colleen's mental impairments as part of the RFC determination. Specifically, Colleen maintains that the RFC fails to account for all of her mental limitations. (Dkt. 15 at 29-32). The Court agrees. The Court has already concluded that the ALJ's analysis related to Plaintiff's ability to interact with others and adapt and

24

manage herself was lacking; thus, it would be impossible for the Court to determine whether the RFC adequately encapsulates all limitations supported by the record. Accordingly, because this matter is being remanded for the ALJ to reevaluate evidence related to the "paragraph B" criteria, the ALJ on remand will also require a new RFC analysis.

## V.   CONCLUSION

For the reasons detailed herein, this Court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment will issue accordingly.

So ORDERED.

Date: 3/23/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email